FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL -6 PM 3: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARY FISK,                          )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Case No. CV-98-TMP-656-S
                                    )
AUTOZONE, INC.,                     )
                                    )
          Defendant.                )

ENTERED

JUL 0 6 1999

### MEMORANDUM OPINION

This action is before the court on defendant AutoZone, Inc.'s
("AutoZone") motion for summary judgment, filed April 30, 1999.
Plaintiff Mary Fisk responded to the motion by filing a brief in
opposition on May 21, 1999.  After the deadline for responding to
the motion for summary judgment had passed, the plaintiff on
May 25, 1999, filed evidentiary submissions, along with a motion
for extension of time, asserting that the evidentiary submissions
had been inadvertently left out when plaintiff filed her
opposition.  The court heard oral argument on the defendant's
motion on June 8, 1999.  All parties have consented to the exercise
of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

### I.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment
is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there

is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require

3

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

4

## II.  Undisputed Facts

The plaintiff, Mary Fisk, was hired by defendant AutoZone early in 1997.  She began working in AutoZone's Jasper, Alabama, store as a customer sales representative.  She previously had worked at an AutoZone store in Louisville, Kentucky.  During her employment at the Jasper AutoZone, Alton Vick was the manager of the store.

AutoZone provided employees with a handbook that detailed the store's policy against sexual harassment.  Plaintiff received the handbook, and also attended two seminars concerning the company's sexual harassment policies and procedures.  At one seminar, Fisk was instructed that any incidents of sexual harassment should be reported immediately to the store manager, Vick, or to Bruce Sherer, AutoZone's area advisor.  The handbook advises employees to report any sexual harassment to "management" immediately.

During her employment, Fisk made one complaint about sexually suggestive conduct by a co-worker.  Fisk made the complaint to the parts sales manager, Justin Tidwell.  The complaint was investigated, and the employee who engaged in the conduct was reprimanded.  He also apologized to Fisk.  She admits that the conduct did not recur, and she had no further problems with that co-worker.

Fisk claims that during her employment with AutoZone, she was repeatedly subjected to lewd comments and gestures from Vick, the store manager.  More specifically, she claims he made frequent comments about her body, made references to his sexual prowess and the size of his penis, asked her to engage in a "menage a trois," told her she should have sex with him, and made other sexual comments.  Vick denies the conduct.

When Fisk became employed at the Jasper AutoZone, the store had received two sexual harassment complaints against Vick in the month preceding Fisk's employment.  One was filed by an employee named Carla Lanthrip, and one by an employee named Judy McGuff.  AutoZone investigated both claims by interviewing and obtaining statements from numerous employees.  Fisk was asked to give a statement during the Lanthrip investigation, which occurred shortly after Fisk began working at the store.  Fisk stated that Vick had never caused her to feel uncomfortable or sexually harassed.  During the investigation, Vick continued to work at the store as manager, and Lanthrip was given leave with pay.  AutoZone asserts that the Lanthrip investigation failed to reveal any corroborating evidence, and Lanthrip was terminated after she refused to accept a transfer to another AutoZone store about 50 miles from Jasper.  Fisk overheard a conversation in which Vick told another employee

6

that Lanthrip wanted to come back to the Jasper store.  Vick said he would not allow it.

The McGuff investigation also did not reveal any corroboration of McGuff's claims, and McGuff left the employment of AutoZone before Fisk was hired.  Fisk testified that she had never heard of McGuff, and apparently had no knowledge of McGuff's allegations.[1]

Fisk did not complain to Bruce Sherer about her problems with Vick.  Fisk had been told that Sherer was "good friends" with Vick and that it "didn't do any good" to complain to Scherer about Vick's actions.  Fisk also claims that she had been told that Vick would fire employees he didn't like, and that she understood that Lanthrip had been fired by Vick after she complained of sexual harassment.  Fisk also was aware of another AutoZone employee who had been fired after he was arrested on drug charges.  Apparently the fired employee told AutoZone employees that he bought the drugs for Vick and that Vick had used cocaine at the store.  In sum, Fisk alleges that she didn't formally complain because she was afraid,

---

[1]    An affidavit of Fisk, filed belatedly by plaintiff's counsel, indicates Fisk did know of McGuff's allegations. However, the court agrees with defendant's assertion that portions of the affidavit are due to be stricken because statements in the affidavit conflict with Fisk's prior testimony. The court grants defendant's motion to strike as to the portions of the affidavit that contradict Fisk's clear testimony. Specifically, the court strikes the reference to McGuff in paragraphs four and seven of plaintiff's affidavit.

based on the experiences of other AutoZone workers, that she would lose her job if she complained about Vick.

Fisk did discuss Vick's conduct with Pam Polk, who was a parts sales manager and Fisk's direct supervisor when Fisk began working at AutoZone. However, before Fisk complained to her about Vick, Polk apparently had been voluntarily transferred into a nonmanagement position. Another co-worker, Charles Grayson, also took part in the conversation. Fisk discussed Vick's conduct with Polk and Grayson and suggested that they should videotape Vick to catch his lewd behavior on tape. Vick learned of Fisk's discussion with Polk and Grayson almost immediately thereafter.

During the last four months of her employment with the Jasper AutoZone, Fisk received several reprimands. Fisk admits that all but four of the reprimands were based on incidents that did occur, but claims that four of the disciplinary measures were not based in fact and were, therefore, done in retaliation for her conversation with Polk. Fisk also alleges that many of the reprimands were based on conduct that other workers engaged in but for which others did not receive reprimands. Fisk was given a final reprimand on December 28, 1997, alleging that Fisk failed to work the shift she

was assigned and acted in an unprofessional manner when called by a manager.  Immediately thereafter, Fisk was terminated.[2]

Fisk brought this action, alleging two claims arising under Title VII:  (1) that Vick's conduct created a hostile work environment, and (2) that AutoZone wrongfully fired Fisk in retaliation for her complaint to Pam Polk.  Fisk also alleged two state-law claims: (1) that Vick invaded her privacy, and (2) that AutoZone negligently supervised and/or retained Vick.

### III.   Defendant's Motion for Summary Judgment

Defendants' motion for summary judgment seeks dismissal of: (1) plaintiff's claims based on Title VII, (2) plaintiff's state-law claim for invasion of privacy, and (3) plaintiff's state-law claim based on negligent supervision or retention.  AutoZone asserts that the hostile environment claim is due to be dismissed on the basis of the affirmative defense established in Ellerth v. Burlington Inds., 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and Faragher v. Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).  AutoZone further asserts that the

---

[2]     Plaintiff has argued that Vick made the decision to fire the plaintiff.  However, the deposition pages referred to in support of that conclusion were not provided to the court. Consequently, there exists a fact question as to who fired Fisk and why.

retaliation claim is due to be dismissed because: (1) plaintiff was not engaged in a "protected activity"; and (2) AutoZone has given a reason for her discharge and that reason has not been shown to be a pretext.

Plaintiff has chosen not to pursue her invasion of privacy claim; consequently, it will not be discussed herein, and the court determines that defendant's motion as to the invasion of privacy claim is due to be granted.   Finally, AutoZone asserts that plaintiff's claims of negligent supervision and retention are barred by the exclusivity provisions of the Alabama Worker's Compensation Act, and that plaintiff failed to show that AutoZone breached the applicable duty of care.   The three remaining claims will be examined in turn.


A.   Sexual Harassment/Hostile Work Environment

In order to sustain a Title VII claim for hostile work environment, the plaintiff must demonstrate that the work environment was both objectively and subjectively offensive. Faragher, 118 S. Ct. 2275, 2283. An employer is vicariously liable to a victimized employee where the hostile environment has been created by a supervisor "with immediate (or successively higher)" authority over the employee. Id. at 2292-93.   The defendant has

offered nothing in the way of rebutting that what plaintiff alleges, if true, would be both objectively and subjectively offensive.   Furthermore, it is undisputed that Vick, as store manager, had authority over Fisk, a sales representative.

AutoZone seeks a dismissal of Fisk's sexual harassment claim based on the affirmative defense set forth by the Supreme Court in Faragher and Ellerth.   AutoZone argues that there is no genuine issue of material fact regarding AutoZone's exercise of reasonable care to prevent and correct sexual harassment in the workplace because it had policies and procedures in place to address the issue and Fisk unreasonably failed to take advantage of the policy by declining to report the offensive conduct to management. AutoZone's argument fails on two fronts.

First, the court notes that the affirmative defense offered in Ellerth and Faragher is available only in instances where the employee has suffered no adverse job consequences. As discussed in Section B infra, a reasonable jury could find that Fisk was fired because she was attempting to expose Vick's harassing conduct. Because a reasonable jury could find that Fisk suffered an adverse job consequence as a result of the alleged harassment by her supervisor, the affirmative defense simply is not available to AutoZone in this instance.   Ellerth, 118 S. Ct. at 2270. ("No

11

affirmative defense is available, however, when the supervisor's
harassment culminates in a tangible employment action, such as
discharge....")

The court declines to grant summary judgment to AutoZone on
the basis of the affirmative defense for a second and independent
reason.   Assuming that the affirmative defense is available to
AutoZone in this case, the burden is on AutoZone to demonstrate
that Fisk's failure to report the conduct to management was
"unreasonable." Ellerth, 118 S. Ct. at 2270.   While the defendant
correctly argues that generalized or unreasonable fear of
retaliation does not absolve an employee of her duty to report the
harassment, a jury could reasonably find that Fisk's fear was not
general or unreasonable, but was based on fact and personal
knowledge.[3]

---

[3]     AutoZone relies on Madray v. Publix Super Mkts., 30 F.
Supp. 2d 1371 (S.D. Fla. 1998), and Jones v. USA Petrol. Corp.,
20 F. Supp. 2d 1379 (S.D. Ga. 1998), for its position that Fisk
was unreasonable in failing to report the harassment.  The court
finds that reliance misplaced.  In Madray, the plaintiffs had no
knowledge that any adverse actions had ever been taken in
response to a sexual harassment complaint, and, in fact, suffered
no adverse action after complaining.  In Jones, the plaintiffs'
fear of repercussions was based on nothing except "conclusory
assertions that ... they would get into trouble if they reported"
the harasser's conduct.  To hold that such fear, when based on
facts and personal knowledge, is "unreasonable" as a matter of
law, this court would, in essence, give harassing supervisors
permission to threaten their victims with termination, demotion,
or other retaliatory measures.  This the court declines to do.

Fisk had been told by a former AutoZone management employee, Pam Polk, that Polk feared she would lose her job if she complained to Sherer about Vick because Vick and Sherer were good friends. Fisk also was told by a former AutoZone employee to "watch out for Alton [Vick] because he'll get [you] fired if he didn't like you." In addition, Fisk had personal knowledge that Lanthrip had complained that Vick had sexually harassed her, and that Lanthrip subsequently lost her job.[4]  Finally, Fisk knew that an assistant store manager, Sharon Cummins, had been fired after she was caught "talking about what had happened to Carla [Lanthrip]."  AutoZone makes much ado about the fact that Cummins' firing was not related to Cummins having made a complaint about sexual harassment.  The salient point, however, is that these incidents, if found credible by a reasonable jury, could lead the jury to determine that Vick had the power to fire anyone who dared to cross him, and that Fisk had a well-founded and reasonable belief that to report Vick's conduct to Sherer would get her fired.  Consequently, the

---

[4]      While AutoZone disputes that the complaint led to Lanthrip's termination, and instead claims that Lanthrip chose to resign, the fact relevant to Fisk's "reasonableness" is what Fisk understood.  Fisk testified that she believed Vick had seen to it that Lanthrip wasn't allowed to continue to work at the Jasper store.

reasonableness of Fisk's actions is a question of fact that the court must leave to a jury.

For these reasons, viewing the evidence in the light most favorable to Fisk, AutoZone's motion for summary judgment as to the plaintiff's hostile environment claim is denied.


B.  Retaliatory Discharge

AutoZone seeks summary judgment on plaintiff's claim that she was retaliated against in violation of 42 U.S.C. § 2000e-3(a). AutoZone first attacks plaintiff's case on grounds that Fisk has failed to establish that she was engaged in a "protected activity" as necessary to prove a *prima facie* case of retaliation.   A protected activity is one in which the employee: (1) has opposed any discriminatory practice violative of Title VII, or (2) has made a charge or participated in an investigation of a Title VII discrimination claim.   Clover v. Total System Servs. Inc., 1999 WL 335389 (11th Cir. May 27, 1999).   Most commonly, this protected activity takes the form of refusing an advance or complaining to management about the harassment.   Fisk does not argue that her conversation with Polk constituted a "complaint," but she does assert that the conversation evidences her opposition to Vick's conduct.

14

It is undisputed that Fisk did not agree to Vick's alleged suggestions that they engage in sex, but that she opposed the proposition.   In addition, Fisk discussed with Polk a plan to videotape Vick's harassing conduct, apparently in an effort to bring it to management's attention and put an end to it.   In light of these undisputed facts, AutoZone can hardly argue that Fisk did not oppose Vick's alleged harassment.[5]   Therefore, Fisk has offered substantial evidence that she engaged in a "protected activity." The issue then becomes whether her actions led to her termination.

Vick does not dispute that he learned of the conversation Fisk had with Polk, or that Fisk's disciplinary record worsened and Fisk was terminated after Vick learned of that conversation.   AutoZone argues that the disciplinary actions taken, and the plaintiff's ultimate termination, were unrelated to Fisk's opposition to Vick's conduct.   It is clear, however, that Fisk is entitled to rely upon "a chain of inferences" to establish the requisite causation.   See Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1246 (11th

---

[5]     It also is undisputed that Fisk participated in an investigation of the sexual harassment reported by Lanthrip, but plaintiff does not argue, and it does not appear, that Fisk's participation in that arguably "protected activity" led to the disciplinary actions taken against Fisk.   Consequently, the court finds that Fisk meets the opposition prong of the protected activity test, but not the participation prong, and that is sufficient to sustain her claim of retaliatory discharge.

Cir. 1998). There exists a genuine issue of material fact as to why Fisk was reprimanded for conduct that she alleges other employees engaged in without incident, and why Fisk's reprimands led to her discharge.[6] The court is not persuaded by AutoZone's argument that because the reprimands were signed by lower level managers, and not by Vick, that they could not have been causally related to Fisk's conversation about Vick. The court also notes with interest that the Jasper AutoZone hired Fisk, knowing that she had received 18 disciplinary notices during her employment at the Kentucky AutoZone Store. It is at least possible that, given the facts presented to this court, a reasonable jury could infer from the facts plaintiff has presented that Fisk's opposition to Vick's conduct was the basis of the discipline she received and that her discharge after the final reprimand was a pretext for retaliation. For these reasons, AutoZone's motion for summary judgment as to plaintiff's Title VII retaliation claim is denied.

---

[6]     The plaintiff has testified that at least four of the reprimands were based on conduct that she did not commit. A jury could infer that if the reprimands were groundless, they must have been retaliatory. The defendant has not offered any evidence that a certain number or degree of reprimands necessarily results in termination, nor has the defendant offered any evidence that other employees were reprimanded for the same type of conduct as Fisk.

16

C. Negligent Supervision or Retention

AutoZone's argument in support of its motion for summary judgment on plaintiff's negligent supervision or retention claim is twofold: (1) that the claim is barred by the exclusivity provisions of the Alabama Worker's Compensation statutes; and (2) that the plaintiff has failed to establish that AutoZone breached any applicable standard of care. The court rejects the first argument without discussion, finding that the worker's compensation statutes are limited to situations in which employees seek redress based on physical injury. As to plaintiff's argument relating to the standard of care, the court finds that there is, at the very least, a genuine issue of material fact as to whether AutoZone acted with due care in retaining Vick as store manager after it had received complaints from two other female employees within a few months of the incidents alleged by Fisk. The mere fact that AutoZone conducted interviews and did not find corroboration of the complaints is not, alone, sufficient to resolve the factual issues as to whether the investigation, and AutoZone's conclusion that the complaints were unfounded, were reasonable. Consequently, AutoZone's motion for summary judgment on plaintiff's claim for negligent supervision or retention is denied.

17

## IV.  Conclusion

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendant's motion for summary judgment against plaintiff is due to be denied as to plaintiff's claims for hostile environment, retaliatory discharge, and negligent supervision or retention. Defendant's motion as to plaintiff's invasion of privacy claim is due to be granted and plaintiff's invasion of privacy claim is due to be dismissed with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 6ᵗʰ day of July, 1999.


T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

18